IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:11-CV-224-D

| | |
|---|---|
| KEVIN L. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's-17 & 19). The time for filing any responses or replies has expired, and, therefore, these motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), these motions have been referred to the undersigned for the entry of a Memorandum and Recommendation. (DE-21) For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-17) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-19) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for Supplemental Security Income ("SSI") on July 20, 2009, alleging that he became unable to work on July 1, 2008. (Tr. 19). This application was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge ("ALJ"),

1

who determined that Plaintiff was not disabled during the relevant time period in a decision dated March 4, 2011. *Id.* at 19-31. The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review on August 15, 2011, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-6. Plaintiff filed the instant action on October 16, 2011. (DE-1).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
>
> 42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by

2

substantial evidence and whether the correct law was applied." <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

**<u>Analysis</u>**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).
>
> <u>Mastro v. Apfel</u>, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 20, 2009. (Tr. 21). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) degenerative disc disease of the lumbar spine; 2) affective mood disorder; and 3) anxiety. *Id.* However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 22. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work. *Id.* at 23-24. Specifically, the ALJ found that Plaintiff:

3

> can lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally. The claimant must have the option to sit and stand alternatively at will, provided that the claimant is not off task for more than 10% of the work period. The claimant can occasionally climb ropes, ladders and scaffolds and can occasionally stoop, crouch and kneel. He must avoid concentrated exposure to excessive vibration and irritants, such as fumes, odors, dust, and gases. He must also avoid concentrated use of moving machinery and exposure to unprotected heights. The claimant can perform only simple, routine and repetitive tasks with occasional changes in the work setting. He can have only occasional interaction with the public and cannot perform tandem tasks.

*Id.* at 23-24.

The ALJ then determined that Plaintiff was not capable of performing his past relevant work. *Id.* at 29-30. However, based on the testimony of a vocational expert ("VE"), the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. *Id.* at 30-31. Accordingly, the ALJ determined that Plaintiff was not under a disability during the relevant time period. *Id.*

The ALJ's findings were supported by substantial evidence. Plaintiff reported on February 18, 2008 that his anxiety was improving. *Id.* at 238. Likewise, Plaintiff stated on September 8, 2008 that his anxiety was "stable." *Id.* at 243. On October 23, 2009, Plaintiff's anxiety and depressive symptoms were described as mild. *Id.* at 349-350. Likewise, the impairments in his ability to work resulting from these symptoms were also described as mild. *Id.* at 350.

Dr. George Huffmon examined Plaintiff on August 7, 2009. (Tr. 345). Plaintiff had normal muscle tone and bulk and full motor strength. *Id.* After discussing the benefits and risks of surgical management, Dr. Huffmon noted that "if [Plaintiff] wishes to proceed, I will be happy to set him up to see one of the other spine surgeons here in town." *Id.*

4

Dr. Robert Gardner assessed Plaintiff's physical RFC on November 10, 2009. *Id.* at 351-358. It was noted that Plaintiff could: 1) occasionally lift 20 pounds; 2) frequently lift 10 pounds; and 3) stand, walk or sit about six hours in an eight hour workday. *Id.* at 352. Plaintiff was assessed as having several postural limitations due to his degenerative back disease. *Id.* at 353. No manipulative, visual or communicative limitations were noted. *Id.* at 354-355. Finally, no environmental limitations were noted except that Plaintiff was to avoid concentrated exposure to hazards such as machinery or heights. *Id.* at 355. Similar findings were made by Dr. Janet Johnson-Hunter on March 16, 2010. *Id.* at 409-416.

Plaintiff's mental RFC was assessed by Dr. Clifford Charles on November 18, 2009. *Id.* at 359-361. He was deemed "not significantly limited" in most abilities, with no ability being more than moderately limited. *Id.* at 359-360. It was determined that Plaintiff had the ability to understand and remember simple and very short instructions. *Id.* at 361. Likewise, Dr. Charles opined that Plaintiff had the ability to carry out and maintain concentration long enough to complete simple tasks. *Id.* Ultimately, Dr. Charles indicated that Plaintiff could perform simple, routine, repetitive tasks in a stable work environment with limited interaction with the public. *Id.* In addition, Dr. Charles determined that Plaintiff's depression and anxiety symptoms did not precisely satisfy the diagnostic criteria of any listed impairment. *Id.* at 366, 368. Plaintiff's functional limitations were generally rated as mild and no more than moderate. *Id.* at 373. Similar findings were made by Dr. Jacquelyn Harrison on March 25, 2010. *Id.* at 417-434.

Plaintiff was "doing very well" on September 8, 2008. *Id*. at 267. Specifically, he was working full time, and his pain score was zero. *Id.* He demonstrated no evidence of major depression. *Id.* On December 15, 2008, Dr. Sunil Arora opined that Plaintiff "should continue to work full time." *Id*. at 268.

5

During a November 30, 2009 examination, Plaintiff demonstrated full muscle strength. *Id.* at 378-379. He was diagnosed with, *inter alia*, spondylolisthesis, low back pain and radiculopathy. *Id.* at 380.

Plaintiff's argument relies primarily on the contention that the ALJ improperly weighed the evidence. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, his claims are without merit. The undersigned will nonetheless briefly address Plaintiff's individual assignments of error.

**The ALJ properly weighed the opinions of Plaintiff's medical care providers**

Plaintiff first argues that the ALJ "improperly disregarded the opinion[s] of . . . Dr. Alatar . . . [and] Erica Christensen, PA-C." (DE-18, pg. 16). It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL 2565245, * 8 (W.D.Va. September 5, 2006)(unpublished opinion)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." *Id*. (internal citations omitted). While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Rather, "a treating physician's

6

opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 1999 WL 7864, * 2 (4th Cir. 1999) (unpublished opinion)(internal citations omitted).

When the ALJ does not give the opinion of a treating physician controlling weight, he must weigh the opinion pursuant to the following non-exclusive list: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship between the physician and the claimant; 3) the supportability of the physician's opinion; 4) the consistency of the opinion with the record; and 5) whether the physician is a specialist. 20 C.F.R. § 404.1527(d)(2)-(6). *See also*, Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96–2p, 1996 WL 374188, at *5. *See also*, Farrior v. Astrue, 2011 WL 3157173, * 4 (E.D.N.C. June 1, 2011).

Ms. Christensen examined Plaintiff on April 28, 2010. *Id.* at 447. She stated that Plaintiff "continues to work fulltime hanging sheetrock." *Id.* It was noted that Plaintiff "does

7

not want surgery." *Id.* Ms. Christensen consistently observed that Plaintiff was able to sit in "reasonable comfort[]", and did not have any difficulty with positional changes. *Id.* at 448, 451, 455, 457, 459, 461, 486. She also frequently noted that Plaintiff's gait was normal, and that Plaintiff had full muscle strength. *Id.* Likewise, on two occasions Plaintiff reported "adequate control [of his pain] with this regimen." *Id.* at 459, 461, 486. On May 17, 2010, Ms. Christensen noted that Plaintiff "is working hanging sheetrock which continues to exacerbate his pain." *Id.* at 451.

Plaintiff's RFC was assessed by Ms. Christensen on February 9, 2011. *Id.* at 463. She opined that Plaintiff could: 1) work two to four hours per day; 2) stand and sit for 60 minutes at one time; 3) occasionally lift 20 pounds; and 4) frequently lift up to 10 pounds. *Id.* at 463. She described Plaintiff's pain as "moderate." *Id.*

Dr. Kira Alatar treated Plaintiff for gastrointestinal discomfort. *Id.* at 334. She noted that Plaintiff needed back surgery, but did not want it. *Id.* On January 14, 2009, Dr. Alatar noted that steroid injections relieved Plaintiff's back pain, although they wore off quickly. *Id.* at 333. Plaintiff reported to Dr. Alatar on December 21, 2009 that he had been able to ride a bike recently. *Id.* at 390.

On February 14, 2011, Dr. Alatar opined that Plaintiff could: 1) work only 1-2 hours per day; 2) stand 15 minutes at one time; 3) sit up to 30 minutes at one time; 4) occasionally lift 10 pounds; and 5) frequently lift up to five pounds. *Id.* at 465. She also indicated that Plaintiff's anxiety had acutely worsened since Plaintiff had been unable to work. *Id.* at 466.

With regard to the opinions of Ms. Christensen[1] and Dr. Alatar, the ALJ made the

---

1 Ms. Christensen is not an "acceptable medical source" and her opinions are not due controlling weight. 20 C.F.R. § 416.913. Even if Ms. Christensen were an "acceptable medical source", the ALJ cited substantial evidence when

8

following findings:

> . . . In providing the claimant the option to sit and stand at will, I have accorded some weight to Ms. Christensen's opinion that he can sit and stand each for only 60 minutes at a time. The lifting restrictions she imposed are no more limiting than those set forth in the above residual functional capacity assessment and therefore have been given some weight. I have accorded some weight to her opinion that the claimant can occasionally bend in limiting the amount the claimant can stoop, kneel and crouch. I have further assigned significant weight to her opinion that the claimant can constantly perform manipulations of the bilateral hands and that he does not need to elevate his legs during an 8 hour workday, as there is no indication that the claimant has any difficulty using his upper extremities or that he has to elevate his legs. However, because it is inconsistent with her treatment notes and the other evidence of record, I have assigned little weight to her opinion that the claimant can work only 2 to 4 hours per day . . .
>
> . . . Dr. Alatar's treatment notes do not support her opinion that the claimant can work only 2 to 4 hours, as she generally documented only the claimant's subjective allegations and did not document any objective abnormalities relative to the claimant's back or anxiety, other than moderate bilateral paraspinallumbar muscle spasms. Accordingly, that portion of her opinion is given little weight. While I have accorded great weight to her opinion that the claimant requires the ability to sit and stand at will, I find no objective evidentiary support for her opinion that the claimant can only frequently perform bilateral hand manipulations and that he needs to occasionally elevate his legs. Her opinions regarding the claimant's ability to lift are not inconsistent with the aforementioned residual functional capacity assessment and have therefore been given some weight. I have accorded little weight to her opinion that the claimant cannot bend, as the clinical findings of record do not suggest that the claimant is precluded from all bending. (Exhibits 9F, 16F and 25F) . . .
>
> *Id.* at 28-29.

The ALJ's decision contains specific reasons for the weight given Ms. Christensen's and Dr. Alatar's opinions, and these reasons were supported by substantial evidence in the case record. Accordingly, this assignment of error is without merit.

---

giving her opinion less than controlling weight.

**The ALJ presented a proper hypothetical question to the VE**

Plaintiff next argues that "there was not substantial evidence to support the hypothetical upon which the ALJ relied" when eliciting testimony from the VE. (DE-18, pg. 21). An ALJ has "great latitude in posing hypothetical questions [to a VE] and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." Koonce, 1999 WL 7864 at * 5. The ALJ is required only to "pose those [hypothetical questions] that are based on substantial evidence and accurately reflect the plaintiff's limitations . . ." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. March 13, 2000). Here, the hypothetical question posed to the VE by the ALJ was based on a RFC determination supported by substantial evidence, as summarized above, and therefore accurately reflected all of Plaintiff's limitations. This assignment of error is without merit.

**The ALJ properly assessed Plaintiff's credibility**

Plaintiff contends that the ALJ incorrectly assessed his credibility. (DE-18, pg. 15). "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Furthermore, the regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; Craig, 76 F.3d at 593-596. First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); Craig, 76 F.3d at 594. Second, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); Craig, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the

symptoms and the extent to which they limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c). At the second step, however, claims of disabling symptoms may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. *See* Craig, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R. 404.1529(c)(2). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186, *4. Ultimately, the ALJ's findings with regard to a claimant's credibility must "contain specific reasons . . . supported by evidence in the case record." *Id.* at * 2.

During the hearing in this matter, Plaintiff testified that he experiences pain "all around [his] lower back." (Tr. 47). He rated this pain as nine on a scale of one to ten when he is without medication. *Id.* at 48. Due to this back pain, Plaintiff contended that he could only stand for 45 minutes at a time. *Id.* at 45. He stated that he could only sit for 20 minutes before becoming uncomfortable and needing to shift positions. *Id.* at 46. Plaintiff testified that he is no longer capable of performing yard work or housework. *Id.* at 55-56. Plaintiff indicated that pain medication made his symptoms "easier to deal with." *Id.* at 46. However, he also asserted that he experiences nausea and a "lack of focus" when taking his medications. *Id.* In addition, Plaintiff contended that he will "usually lay down two to three times a day to relieve" his pain. *Id.* at 47. Plaintiff testified that occasionally his legs "will go numb." *Id.* According to Plaintiff his medical providers informed him that surgery would have a 60 percent chance of improving his

11

symptoms. *Id.* at 63. However, he also contends that his doctors advised him to postpone this surgery as long as possible. *Id.* at 64.

Furthermore, Plaintiff testified that he suffers from anxiety. *Id.* at 51. Specifically, he indicated that "thoughts get in [his] head and [they] make[ his] mind race." *Id.* at 51-52. These thoughts also cause him to break out in a cold sweat. *Id.* at 52. Plaintiff also asserted that he experiences depression and feels helpless. *Id.* at 54.

With regard to Plaintiff's credibility, the ALJ made the following findings:

> At the hearing, the claimant testified he attempted to work for 8 days as a contractor in November 2010 but ceased working due to his inability to perform the demands of that job. He stated he has attempted to work as a contractor by hiring and supervising subcontractors but has been unsuccessful due to the poor economy. He admitted that he would be able to supervise others if they were performing the physical demands of construction. However, he stated he could not work a full day due to his inability to stand in a construction zone for 6 to 8 hours. The claimant testified he has difficulty concentrating due to his pain. He estimated he can stand for only 30 to 45 minutes but cannot stand in one position. He stated he can sit for only 20 minutes and frequently has to alternate positions.
>
> The claimant reported that his pain medications help to dull his pain but do not completely relieve his pain. He stated he experiences nausea approximately 2 to 3 times a day from his pain medications and that he has difficulty concentrating after taking his medications. He estimated he can focus on a task for only 30 minutes to I hour. The claimant testified he lies down approximately 2 to 3 times a day for approximately 30 minutes to 2 hours each time. He stated his lower back pain radiates down into his legs and that he experiences numbness of his bilateral legs and feet. On a scale of 1 to 10, with 10 representing the maximum amount of pain, the claimant rated his pain as a 9 or 10 without medication and as a 6 or 7 with medication.
>
> The claimant testified that his treating physicians have informed him that there is only a 60% chance that surgery would improve his pain symptoms. He stated he suffers from anxiety, characterized by panic attacks, racing thoughts, and paranoia. The claimant testified that he experiences anxiety approximately 2 or 3 times a day and that he lies down when he experiences these episodes. He stated his anxiety medication takes approximately 10 to

12

15 minutes to take effect. The claimant reported he suffers from depressive symptoms and feelings of helplessness and anger.

Regarding activities of daily living, the claimant testified his wife generally does the household chores and he only helps to fold clothes while sitting. He stated he enjoys reading magazines but that he has difficulty focusing and concentrating. He reported he also has memory difficulties. The claimant testified he does not have any friends and does not engage in any social activities.

While the claimant has received medical treatment for his severe impairments since his application date, the medical evidence does not indicate that his symptoms are as limiting as he has alleged. Notably, treatment notes from June 2009, only 1.5 months prior to the claimant's application date, reflect that the claimant reported significant relief of his lower back pain from epidural steroid injections and exhibited a relatively normal gait, negative straight leg raise tests, and only minimal bilateral sacroiliac (SI) joint tenderness. (Exhibits 4F and 5F). In August 2009, the claimant reported worsening lower back pain, and George V. Huffmon, III, M.D., noted the claimant demonstrated an antalgic gait and pain with straight leg raise tests at 70 degrees bilaterally. Dr. Huffmon noted he discussed surgical options with the claimant but indicated that the claimant elected not to proceed with back surgery at that time. (Exhibit 10F). Additionally, in November 2009 treatment notes, Sunil Arora, M.D., noted he discussed surgical options, including a L5-S I decompression and fusion, with the claimant. However, the record reflects that the claimant declined surgical treatment. (Exhibit 15F) . . .

In assessing the claimant's credibility, I note that in his application for social security income, the claimant alleged a disability onset date of July 2008. However, in April 2010, the claimant reported he was working on a full-time basis hanging sheetrock, which is inconsistent with his allegation that he became disabled in July 2008. The claimant also reported he worked temporarily as a contractor in November 2010. While he testified he had to cease working because he was unable to perform the physical demands of that job, he indicated he may be able to perform supervisory-type work that did not require excessive standing and walking if such jobs were available. Additionally, as mentioned previously, December 2010 treatment notes reflect that the claimant was searching for regular work, suggesting his pain is not as limiting as he has alleged. (Exhibit 23F).

Moreover, the fact that the claimant has elected not to proceed with back surgery suggests his pain is more tolerable than he has conveyed. The claimant attributed his decision not to undergo surgery to his physicians' predictions that there is only a 60% chance that surgery would improve his

13

pain symptoms. However, none of the claimant's treating physicians documented the likelihood that surgery would or would not help the claimant's pain symptoms. Further, in her April 2010 treatment notes, Ms. Christensen specifically noted that the claimant "does not want surgery." (Exhibit 23F).

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment.

*Id.* at 24-27.

Here, the ALJ followed the appropriate standards in assessing Plaintiff's credibility. The ALJ's findings of fact demonstrate that the ALJ gave proper weight to all of Plaintiff's limitations and impairments in assessing Plaintiff's credibility. Likewise, the ALJ's citations to Plaintiff's medical records constitute substantial evidence which support that assessment. Accordingly, this assignment of error is without merit.

## Conclusion

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-17) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-19) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Thursday, September 27, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE